Submitted April 7, 2020, affirmed May 19, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARCELLUS RAMON ALLEN,
aka Marcellus Allen Allen,
*Defendant-Appellant.*

Multnomah County Circuit Court
120532225; A169015

489 P3d 1075

Defendant appeals from a judgment of conviction for murder, ORS 163.115. In his third through tenth assignments of error, defendant argues that, after his offer to stipulate to several facts, the probative value of the state's evidence about those facts was substantially outweighed by the potential for prejudice. As a result, defendant argues that the trial court erred in admitting the challenged evidence and did not create a sufficient record when doing so. *Held*: Defendant's stipulations were not of equal probative value to the state's evidence, the evidence retained additional probative value, and its probative value was not—as a matter of law—substantially outweighed by the risk of undue prejudice. Accordingly, the trial court did not fail to make a record, nor abuse its discretion, in admitting the challenged evidence. Defendant's remaining assignments of error were rejected without discussion.

Affirmed.

Jerry B. Hodson, Judge.

Frances J. Gray filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Brewer, Senior Judge.

DeVORE, P. J.

Affirmed.

**DeVORE, P. J.,**

Defendant appeals from a judgment of conviction for murder, ORS 163.115,[1] entered after a successful appeal and subsequent retrial. We address defendant's third through tenth assignments of error, which raise essentially the same issue. We reject the other assignments of error without discussion. Defendant argues that, after his offer to stipulate to several facts, the probative value of the state's evidence about those facts was substantially outweighed by the potential for prejudice. We conclude that the trial court properly considered and admitted the challenged evidence under OEC 403. We affirm.

Defendant was convicted of the murder of H. Because defendant was convicted, we recite the narrative from the state's evidence, except where an evidentiary dispute requires reference to differing evidence. *See State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, 546 US 1044 (2005) (involving evidentiary issues in murder conviction).

H had been in the business of selling medical marijuana to individuals, and he was known for selling high quality marijuana at about half the price of other sellers. According to the state's evidence, at around 11:30 p.m. on May 9, 2012, three men appeared at H's home, and someone knocked on the door. H's domestic partner, N, heard someone say they knew one of H's close friends and wanted to buy marijuana. H stepped outside and told N to go upstairs. As she did, she heard someone yell H's name and then "a lot" of gunfire. N told the officers that she had looked through the peep hole to see a dark-skinned man wearing a red baseball hat on the front porch. Later that night, she told officers that the hat might instead have been white or gray, but she maintained that the man was wearing a "red top" or something red.

An autopsy and ballistics analysis would later reveal that H had been shot nine times with three different guns. A criminalist also concluded from wounds that three

---

[1] Although ORS 163.115 has been amended after the crime in this instance, we refer to the current version of the statute because those amendments do not affect our analysis.

guns were fired from different positions, indicating three shooters. Three kinds of bullets and casings were found at the scene and during the autopsy: .22 caliber, 9 millimeter, and .380 caliber.

Soon after the shooting, police learned that three suspects were hiding in a nearby apartment. Police surrounded the apartment for several hours. Eventually, the officers took the three men into custody and searched the apartment. Among other items, officers found three guns—a .22 caliber revolver, a 9 millimeter handgun, and a .380 caliber handgun—that were later confirmed to be the three guns used to shoot H. (The state's theory would be that defendant used the .380 handgun.) Officers also found items of clothing. DNA testing connected two of those things to defendant: a red baseball hat with a white letter "M" and a sweatshirt with the letters "LRG".

Defendant and the two other suspects were each indicted for murder.[2] ORS 163.115(1). Initially, defendant and the two others were tried together in a combined trial. *State v. Allen*, 288 Or App 244, 245, 406 P3d 89 (2017). In that first trial, the court admitted evidence of the defendants' gang affiliation and their relationships to other people who had previously possessed the .380 caliber handgun that defendant allegedly used to shoot H. The trial court held that evidence to be relevant for the noncharacter purposes of showing the affiliations and relationships among the codefendants, their ability to access the murder weapons, and the motive for the murder—eliminating a competing marijuana dealer. The jury found all three defendants guilty of murder. *Id.* On appeal, we reversed and remanded for a new trial on issues not related to this appeal. *Id.* at 252.

On remand, the state's theory about the motive for the murder remained that defendant and others murdered H to eliminate a rival marijuana dealer who was known to sell marijuana at a much lower price. Defendant contended that he had nothing to do with the murder. Defendant acknowledged that he had travelled to H's home with the other two suspects, but he argued that he had stood by the

_____

[2] The three men were also each indicted for unauthorized use of a vehicle, ORS 164.135(2), but that count was later dismissed.

car down the street from H's home, waiting for the other two suspects to finish buying marijuana while he communicated with friends on his phone. He suggested that one of the other suspects must have fired two guns simultaneously.

Before the retrial, defendant offered to stipulate to certain facts: that he was a member of a gang, that he knew the other two suspects as fellow gang members, and that the .380 handgun had been in the possession of another gang member about 10 days prior to H's murder. Defendant argued that, given those potential stipulations, much of the state's evidence regarding defendant's gang affiliation would be cumulative and unduly prejudicial. In particular, defendant challenged the admission of evidence of four prior shootings in which the .380 firearm had been used; three photos showing defendant's tattoos; a photo of defendant wearing the red hat with an "M" on another occasion; a photo of defendant wearing a watch found in the apartment and an arrangement of cash spelling out "HMF" (a reference to a subset of a gang); two photos of defendant and another suspect displaying gang signs; a text message from defendant telling one of the other suspects to "[a]sk him can you use one for tonight but we'll bring another one in an hour"; a video of defendant at a strip club in Atlanta; and a video of defendant at a strip club in Miami. Defendant contended that, because he would stipulate to several facts, the state's evidence would not provide any additional value and would become impermissibly prejudicial.

The state responded that the challenged evidence would not become cumulative because each item served a purpose beyond merely demonstrating defendant's general gang affiliation, relationships, and the previous ownership of one of the murder weapons. Specifically, as to evidence of the four other shootings in which the .380 handgun was used, the state argued that those shootings were probative to explain how defendant gained access to the murder weapon, because it demonstrated that gang members, at times, rotate weapons among themselves and that defendant had access to this particular gun through his association with two different gangs. The state argued that photographs of the red hat were not just probative of defendant's gang membership but also that he frequently wore the hat and that it was

noticeably "odd" that he had left it behind when leaving the apartment. The state argued that photos of the cash, spelling out "HMF," showed that defendant and others pictured were connected to each other, not only through a larger gang, but to a specific subset within the gang. The state argued that defendant's text message, which asked another gang member to see if he could get "another one tonight," referred to acquiring guns and helped to show defendant's preparation for the murder and his specific connection to the murder weapon. The state argued that the video of defendant in the Atlanta strip club, by virtue of showing defendant with members of the gang in another state, showed the strength of defendant's association with the gang. Finally, the state argued that the video of defendant in the Miami strip club was relevant because the other individual in the video was the gang member last known to have used the .380 handgun allegedly acquired by defendant and showed defendant's specific connection to the .380 handgun used in this case.[3]

After hearing arguments from the parties as to each challenged item, the trial court admitted the evidence. The trial court determined that each item described above was relevant to show defendant's preparation, motive, opportunity, or intent to commit the charged murder. To reduce the possibility of prejudice to defendant, the trial court required the state to remove from photos, or "photoshop out," defendant's tear drop facial tattoo, which could be interpreted as suggesting that defendant had killed someone, and the court limited testimony regarding the "CK" gang sign that defendant made with his hands in photos to exclude any explanation that "CK" stands for "Crip killer."

At the conclusion of the second trial, the jury unanimously convicted defendant of murder based on both prosecution theories—that defendant personally caused H's death and that defendant aided and abetted another in causing H's death.

On appeal, the state and defendant generally repeat their arguments. Defendant categorizes the challenged

_____

[3] DNA evidence connected a companion to the .22 revolver, but no fingerprints or DNA were found on the .380 handgun.

evidence into two groups: (1) evidence that the .380 caliber handgun was used in prior shootings and (2) evidence related to defendant's gang affiliation. He reprises his argument that both groups of evidence should have been excluded because "[defendant's proposed] judicial admissions vitiated any probative value and rendered cumulative any additional evidence of these facts." Defendant argues that the gang-affiliation evidence prejudiced defendant by implying "social judgments and stereotypes about [defendant's] lifestyle that were not relevant to the facts at issue in the case." Defendant argues that the trial court abused its discretion when balancing the probative value and prejudicial nature of the evidence because "its findings [were] perfunctory and its record is inadequate for review."

As a preliminary matter, we reject as unpreserved an added argument made in support of defendant's third through tenth assignments of error. In that new argument, defendant cites OEC 404(3)[4] and argues for the first time on appeal that each item of challenged evidence was admitted based on impermissible propensity-based reasoning.[5] In the trial court, defendant's arguments were limited to whether his proposed stipulations rendered the other evidence impermissibly prejudicial. Because defendant's propensity argument as to the third through tenth assignments did not sufficiently alert the trial court to those arguments now made upon appeal, he did not preserve the issue, and we do not address it. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (explaining that preservation requires a party to ensure his objection is specific enough to ensure the court can identify the alleged error with enough clarity to permit it to consider and correct the error immediately).

---

[4] OEC 404(3) prohibits evidence of "other crimes, wrongs or acts" when offered to prove the character of a person for propensity purposes, but allows evidence for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[5] His new argument is inconsistent with concessions at trial, in which he acknowledged that some of the challenged photos were relevant to show "not just that they were part of the same gang [as] each other, but that they socialized together, [and] that's fine." As to the "photos of [defendant] with the M hat," upon which defendant bases his fifth assignment of error, defendant stated that he did not "dispute [they] are relevant." Defendant allowed that "bringing up gang relationships is not necessarily affected by these stipulations."

That said, we reach the central issue in this case—whether the trial court erred when applying OEC 403. The familiar language of OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

We review a trial court's decision to admit evidence challenged under OEC 403 for an abuse of discretion. *State v. Parker*, 285 Or App 777, 785, 398 P3d 437 (2017). The trial court errs if it "fails to exercise discretion, refuses to exercise discretion or fails to make a record which reflects an exercise of discretion." *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987).

The probative value of evidence is "essentially a measure of the persuasiveness that attaches to a piece of evidence." *State v. Lawson/James*, 352 Or 724, 757, 291 P3d 673 (2012). Determining the probative value concerns the strength of the relationship between the proffered evidence and the proposition sought to be proved. *Id.* (citing *State v. O'Key*, 321 Or 285, 299 n 14, 899 P2d 663 (1995)). Evidence may cause unfair prejudice where the preferences of a trier of fact are "affected by reasons essentially unrelated to the persuasive power of the evidence to establish a fact of consequence." *Id.* (internal quotation marks omitted).

The Oregon Supreme Court has explained that, when a trial court balances the probative value of evidence against the danger of unfair prejudice, the process involves four parts. *Mayfield*, 302 Or at 645.

> "First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to

> make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

*Id.* The four-part process, however, does not require recitals in a particular manner on the record. *State v. Anderson*, 363 Or 392, 404, 423 P3d 43 (2018). Rather, a trial court engages sufficiently in balancing and making a record when its ruling, considered in light of the parties' arguments, demonstrates that the court balanced the appropriate considerations. *Id.*

Defendant argues that the trial court abused its discretion by disregarding each part of the balancing analysis. First, defendant argues that the relevance of the evidence was "vitiated" by defendant's offered stipulations that he was a gang member, that he knew the two other suspects through the gang, and that the gun had previously been used by a member of defendant's gang. Second, defendant argues that each item of evidence was unfairly prejudicial given defendant's proffered stipulations. Finally, defendant argues that the trial court's balancing process was faulty because the trial court "did not make specific findings as to how each disputed item of evidence remained relevant." Instead, defendant asserts, the trial court "simply concluded, on a global basis," that each piece of evidence was relevant.

The short answer is that defendant misperceives the law and the record. A defendant's stipulation to particular facts does not automatically render all other evidence touching on the same facts cumulative. *See State v. Sparks*, 336 Or 298, 308, 83 P3d 304, *cert den*, 543 US 893 (2004) (explaining that a defendant's stipulation is an alternate form of proof but does "not have the effect of making otherwise relevant evidence irrelevant"). When determining whether a defendant's stipulation renders other evidence cumulative and prejudicial, the Oregon Supreme Court has examined whether a stipulation was of "equal evidentiary significance" to the other evidence or if excluding the other evidence "would [leave] gaps in the prosecution's narrative of the crime." *Id.* at 311. We have explained that the trial court must first analyze the purpose for which the challenged

evidence was introduced. *Parker*, 285 Or App at 785. Then, the trial court must assess the probative value of that evidence in light of the availability of the less prejudicial stipulation to determine whether a difference in the probative value maintains the proponent's need for the challenged evidence. *Id.* at 785-86.

In this case, defendant's three stipulations—that he was a member of a gang, that he knew the two other suspects through the gang, and that the gun was previously in the possession of another member of the gang—required the trial court to assess the probative value of each item of evidence to determine whether the stipulations achieved the same purpose.

The trial court did just that. The trial court elicited from both parties arguments that addressed the probative value and prejudicial nature of each item of evidence. Defendant argued that each photo, video, and other sort of evidence was merely probative of the same facts to which defendant had stipulated. The state provided an explanation for each item of evidence detailing why the probative value went beyond that of defendant's proposed stipulated facts. According to the state, its proffered evidence demonstrated the extent of defendant's commitment to the gang, his commitment to a specific subset of the gang, the depth of his relationship with the other suspects, the improbable prospect that defendant was just an innocent bystander, his financial interest in the gang, and the likelihood that defendant himself procured the gun through the gang.[6] As to each matter, the trial court found that the state had carried its burden of establishing that the challenged evidence retained probative value beyond the simple facts in defendant's stipulations.

Defendant's challenge to the trial court's record of balancing is similarly unpersuasive. The record reflects that the trial court did not just make a "global" statement as to the relevance of all evidence challenged by defendant

---

[6] The evidence regarding the guns' transfer among gang members and defendant's gang affiliation is distinguishable from instances where the other evidence offered after a defendant's stipulation was relevant only to prove the same discrete fact in the case. *See Sparks*, 336 Or at 311 (detailing such instances).

without any individualized findings. Instead, the parties' arguments as to each item of evidence fully covered the probative value and prejudicial nature of the evidence. The trial court made separate statements after argument pertaining to each item of evidence that it had found "that the probative value's not substantially outweighed by the danger of unfair prejudice, and therefore, will allow it." Further, it is no coincidence that, during the hearing, defendant did not request a more complete explanation of the trial court's balancing or underlying reasoning. Even if only incidentally, that reticence confirms the conclusion that the trial court's record-making was sufficient. *See Anderson*, 363 Or at 410 (explaining that, although a defendant does not need to request a more complete explanation to preserve the argument, the "absence of a request for further explanation [is] a factor that [bears] on the sufficiency of the explanation that the trial court provided").

Finally, the trial court demonstrated its adherence to the balancing process when it made provisions to exclude portions of the challenged evidence—requiring defendant's tear drop tattoos to be removed from photographs and restricting the explanation of the "CK" gang sign. In doing so, the trial court showed that it considered and addressed the potential prejudice presented by specific items of evidence.

In sum, defendant's stipulations were not of equal probative value to the state's evidence, the evidence retained additional probative value, and its probative value was not—as a matter of law—substantially outweighed by the risk of undue prejudice. Accordingly, we conclude that the trial court did not fail to make a record, nor abuse its discretion, in admitting the challenged evidence.

Affirmed.